FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2012 NOV -7  PM 3: 46

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01394-WYD-MEH

MALIBU MEDIA, LLC,

      Plaintiff,

v.

LAURA LIN, ANDREW SCHINSKY,
MARK CRONSHAW, CHRISTOPHER O'SHELL,
WEI GOODRICH and JOHN DOE 1

      Defendants.

---

## DEFENDANT ANDREW SCHINSKY MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE STATE A CLAIM

---

Defendant, Andrew Schinsky ("Defendant"), appearing *pro se* and pursuant to Fed.R.Civ.P. 12(b)(6), hereby moves to dismiss Malibu Media, LLC's ("Plaintiff's") Complaint for failing to state a claim upon which relief may be granted. In support thereof, Defendant states as follows:

## INTRODUCTION

Plaintiff's Complaint alleges that Plaintiff's materials were reproduced and distributed through a series of BitTorrent transactions conducted using a computer accessing the internet and identified through an Internet Protocol ("IP") address assigned to the Defendant's internet account. The entirety of these claims hinge upon Plaintiff's purely speculative conclusion that "[The ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." (Complaint ¶23)(emphasis added). This conclusion is prefaced

2

exclusively on a boilerplate allegations used in hundreds of identical mass-copyright suits. The Amended Complaint, however, provides no information or details whatsoever as to how Plaintiff concluded that Defendant actually committed any volitional act of copyright infringement as required to sustain a claim of direct copyright infringement. In fact, the Plaintiff's already thread-bare claims, as will be discussed below, are factually inaccurate and misleading. Nor does Plaintiff's Amended Complaint provide any allegation that Defendant violated any of Plaintiff's rights apart from this conclusory statement and should be dismissed. *See, e.g., Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009)("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.")).

## I. PLAINTIFF IS JUDICIALLY ESTOPPED FROM ALLEGATIONS AS TO THE IDENTITIES OF DOE DEFENDANTS

Plaintiff Malibu Media, in identical mass-copyright litigation implicating as discussed below Bittorrent software has represented to this Court numerous times in the past that "the subscriber of the internet service being used to distribute Plaintiff's copyrighted movies, Defendant is the *most likely* infringer." (*See Malibu Media, LLC v. Lindsey Maness*, Case No.: 1:12-cv-01873, Complaint at ¶23, (Dck. 1))(emphasis added). However, having been challenged in this and other Courts on this obviously deficient pleading, Plaintiff has substantively changed its prior statements on the record. Plaintiff now submits that the Defendant that the "ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's *true identity*." (Amended Complaint ¶ 15). Plaintiff should be judicially estopped from taking such inconsistent positions going forward.

The legal principle of judicial estoppel is a discretionary remedy courts may invoke "to prevent 'improper use of judicial machinery.'" *Johnson v. Lindon City Corp.*, 405 F.3d 1065,

3

1068 (10th Cir. 2005) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (citation omitted)). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Id.* quoting *Davis v. Wakelee*, 156 U.S. 680, 689(1895). Although noting that this rule is "'probably not reducible to any general formulation of principle,'" *New Hampshire*, 532 U.S. at 750 (citation omitted), the Court noted several factors which other courts have typically used to determine when to apply judicial estoppel.

First, a "party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (citation omitted). Moreover, the position to be estopped must generally be one of fact rather than of law or legal theory. *Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996). Second, "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.'" *New Hampshire*, 532 U.S. at 750 (citation omitted). The requirement that a previous court has accepted the prior inconsistent factual position "ensures that judicial estoppel is applied in the narrowest of circumstances." *Lowery*, 92 F.3d at 224. Third, "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 751.

A prior allegation that a punitive Defendant is "most like an infringer" based on an IP address as opposed to one who's "true identity" can now be divined from that same IP address are clearly inconsistent positions of fact. Both positions have been used by Plaintiff as a rationale to persuade this Court to grant leave to take *ex parte* discovery. Such inconsistent statements

4

were relied upon by the Court in granting such early discovery. Finally, Defendant is prejudiced in its attempt to challenge Plaintiff's allegations which must raise to a plausible level, which Plaintiff's now seeks to bolster through even stronger, yet still unsupportable allegations where there has been no change in material fact to support such a position other then to cover obvious failing in Plaintiff's already threadbare claims.

## II.    LEGAL STANDARD UNDER RULE 12(b)(6)

Regardless of Plaintiff's actual operative pleadings both statements are insufficient to support a challenge under Rule 12(b)(6). Specifically, to survive a motion to dismiss for failure to state a claim, a complaint must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2). While Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007)). Consequently, to survive a motion for dismissal, a "complaint's allegations must plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a "speculative level'" *Effkay Enters. v. J.H. Cleaners, Inc.*, 2008 U.S. Dist. LEXIS 46127 at *4-5 (D. Colo. June 5, 2008)(citing *Twombly*, 127 U.S. at 1964-65)).

The court is to "assume the factual allegations are true and ask whether it is plausible that the plaintiff is entitled to relief." *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009), however the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Iqbal*, 556 U.S. at 647. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Khalik v. United Air Lines*, 2010 U.S. Dist. LEXIS 129598 at *4 (D. Colo. Dec. 7, 2010)(quoting

5

*Twombly*, 550 U.S. at 557)). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Patterson v. Dex Media, Inc.*, 2012 U.S. Dist. LEXIS 124067 at *4-5 (D. Colo. Aug. 31, 2012)(citing *Twombly*, 550 U.S. at 556)).

## ARGUMENT

### III.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Dismissal of this action is warranted as Plaintiff has failed to plead any factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). In order to set forth a *prima facie* claim of direct copyright infringement Plaintiff must show ownership of a valid copyright[1] and an actual violation by the defendant of one or more exclusive rights set forth in 17 U.S.C. § 106. *See Feist Pubs., Inc., v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Pursuant to Fed.R.Civ.P. 8(a)(2), Plaintiff must plead facts sufficient to allow the Court to draw the inference that the defendant is liable for the alleged misconduct; in this case direct copyright infringement. However, Plaintiff's Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion that Defendant is infringer. Furthermore, Plaintiff's already threadbare Complaint is both factually inaccurate and misleading.

### A. PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT IS LIABLE FOR COPYRIGHT INFRINGEMENT

Plaintiff's speculation that Defendant is the infringer is a guess and not offered in good faith. It is not supported by facts as required by Rule 8(a)(2). The sole allegation relied upon by

---

[1] Defendant specifically reserves the right to contest not only validity but ownership of such copyright(s) at a later date.

6

Plaintiff in identifying the Defendant as the allegedly infringing party is that he was identified by his Internet Service Provider ("ISP") as the subscriber for internet service that was allegedly assigned an IP address from which Plaintiff's agent allegedly received a piece of Plaintiff's allegedly copyrighted works via the Bittorrent protocol.

As a factual matter, any customer of an ISP -- such as the moving Defendant -- who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See generally LVRC Holdings v. Brekka*, 581 F.3rd 1127, 1130 (9th Cir. 2009). An "IP address is a series of numbers associated with a server or website, and it is used to route traffic to the proper destination on the Internet." *Kirch v. Embarq Mgmt. Co.*, 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011). More specifically, an IP address identifies only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router as in the instant action. It can also be "dynamic" such that it changes every time one connects to an internet access point as well. As a result, one court noted that, "[b]ecause it is common today for people to use routers to share one internet connection between multiple computers, the subscriber associated with the IP address may not necessarily be the alleged infringer." *Bubble Gum Productions, LLC v. Does 1-80*, 2012 WL 2953309 at *4 (S.D.Fla. Jul. 19, 2012).

More on point, the United States District Court for the Eastern District of New York has already addressed -- in an identical case involving the current Plaintiff, Malibu Media, LLC, and its counsel Mr. Kotzker -- the erroneous assumption that an internet subscriber identified only by an IP address assigned to their account is an infringer holding that:

> [T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is

7

tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

*In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012); *see also Next Phase Distrib., Inc. v. Does 1-27*, 2012 U.S. Dist. LEXIS 107648, at *14-15 (S.D.N.Y. July 31, 2012)(same). The *In re BitTorrent* court further advised Plaintiff, Malibu Media, LLC, and its counsel in unambiguous terms that:

> [It was] concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."

*Id.* (citing *Digital Sin, Inc. v. Does* 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012)) (citations omitted).

The *In Re Bittorrent* court specifically noted that Plaintiff's original complaint admitted that "IP addresses are assigned to devices" and that, as Plaintiff argued then, that by allowing Plaintiff to discover the individuals associated with those IP addresses, it would "reveal defendants' true identity." *Id.* at *13. The court flatly rejected this flawed reasoning and correctly determine that identification of the actual infringer would be "unlikely" noting that "most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning

8

that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper." *Id.*

Contrary to Plaintiff's admittedly self-serving "guess," in identical Bittorrent cases across the country courts have overwhelmingly recognized, -- and numerous mass-copyright plaintiff's -- have even <u>admitted on the record</u> the simple fact that an IP address does not, and cannot identify an infringer. *See SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3 (N.D. Cal. 2011)("the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes."); *Third Degree Films v. Doe*, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. 2011)(ISP subscriber information "does not tell Plaintiff who illegally downloaded Plaintiff's works."); *Pacific Century Intern. Ltd., v. Does 1-101*, 2011 2011 U.S. Dist. LEXIS 124518, at *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery of subscriber's information based on an IP address would allow it to identify Defendants); *Digital Sin, Inc. v. Does 1-5698*, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011)(ISP subscribers may not be the individuals who infringed upon Digital Sin's copyright); *In re Ingenuity 13 LLC*, 2012 U.S. Dist. LEXIS 38647, *18 (E.D. Cal. Mar. 20, 2012)( (ISP subscriber "information alone would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization" and that petitioner "would be required to engage in further pre-filing discovery to determine if a viable cause of action existed against any of the identified subscribers."); *Hard Drive Productions, Inc. v. Does 1-130*, 2011 WL 553960, at *2 (N.D. Cal. 2011)("Plaintiff concedes, in some cases the Subscriber and the Doe Defendant will not be the same individual"); *VPR Internationale v. Does 1-1017*, 2011 U.S.

9

Dist. LEXIS 64656 at *4 (C.D. Ill. Apr. 29, 2011) (noting that "[t]he infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.").

Even this Court has recognized the results of the simple calculation that an IP address does not equal infringer. As Judge Martinez noted in *Malibu Media, LLC v. Felitti*:

> [S]ubscriber John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works. John Does 3 through 203 could be thieves, just as Plaintiffs believe."

2012 U.S. Dist. LEXIS 103393, at *9-10 (D. Colo. July 25, 2012)(quoting *Third Degree Films v. Does 1-3577*, 2011 U.S. Dist. LEXIS 128030, at *4 (N.D. Cal. Nov. 4, 2011)). Judge Martinez even went so far as to note the effects of this disconnect between internet subscriber and actual infringer disclosing that:

> The Magistrate Judge assigned to all BitTorrent cases has noted that defendants are coming forward with a multitude of different defenses. Some are businesses alleging that a patron was the unlawful downloader. Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet; they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint."

*Id.*

Despite the overwhelming and specific findings and admissions to the contrary, Plaintiff admittedly named the Defendant as the alleged "true" infringer simply because his name is on the cable bill. This central allegation is merely a guess. This legal fiction has been resoundingly rejected by this and numerous other courts. Rule 8(a)(2) requires more. It requires Plaintiff to plead facts sufficient to allow the court to draw the reasonable inference that the defendant was the person who actually engaged in the alleged infringing activity. Federal lawsuits alleging

10

nearly $2.5 million dollars in liability are not exercises in acceptable "percent error." Plaintiff has failed to carry this burden and its Complaint should be dismissed.

## B. PLAINTIFF FAILS TO ALLEGE FACTS THAT DEFENDANT COMMITTED A VOLITIONAL ACT OF COPYRIGHT INFRINGEMENT

Consistent with its burden under Fed.R.Civ.P. 8(a)(2), Plaintiff must plead facts sufficient to allow the Court to draw the inference that the Defendant violated one or more exclusive rights set forth in 17 U.S.C. §106. *See, Feist, supra.* 499 U.S. at 361. While copyright is a strict liability statute, many courts have correctly recognized that inherent in any such violation of a §106 right, some element of volition or causation must exist. See *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993); (requiring Plaintiff to prove" as a factual matter," Defednant copied portions of its work."); *see also Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (granting motion to dismiss where Plaintiff failed to plead any plausible facts that Defendant committed a volitional act of copyright infringement.); *see also Field v. Google, Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) (holding that a plaintiff must show volitional conduct on defendant's part to support finding of direct copyright infringement). Similar to *Disney Enters. v. Hotfile Corp*, the Plaintiff's Complaint includes no allegations that the Defendant "took direct, volitional steps to violate the plaintiffs' infringement." 798 F. Supp. 2d 1303, 1308 (S.D. Fla. 2011); *see also Cartoon Network LP v. CSC Holdings, Inc*, 536 F.3d 121 (2d Cir. 2008)(a defendant must "engage in volitional conduct - specifically, the act constituting infringement - to become a direct infringer").

Plaintiff alleges that Defendant is the subscriber of an internet service purportedly associated with the infringing IP address. Plaintiff's subscription to an internet service, however,

11

is not a "volitional" act of infringement. Cf. *Disney Enters.*,798 F. Supp. 2d at 1309(noting that "courts have repeatedly held that the automatic conduct of software, unaided by human intervention, is not 'volitional.'") Similarly, since an IP address cannot identify a specific person, an IP address – alone -- is insufficient to support any allegation of volitional conduct. Therefore, Plaintiff's mere allegation that technology *allegedly* subscribed to by the Defendant may have been used to infringe is, absent some allegation that Defendant consciously and physically executed the steps necessary to download Plaintiff's films, insufficient to support Plaintiff's claim of direct infringement. See id.; see also Parker v. Google, 422 F. Supp. 2d 492, 497 (E.D. Pa. 2006) ("When an ISP automatically and temporarily stores data without human intervention so that the system can operate and transmit data to its users, the necessary element of volition is missing.") As it has already been shown, Plaintiff cannot even identify who may have infringed its works, if such a person even exists, it certainly has not plead any facts supporting an inference that Defendant actually engaged in any volitional infringing activity, and thus lacks a good faith basis for asserting copyright infringement claims against Defendant.

## C. PLAINTIFF HAS ADMITTED THE INSUFFICIENCY OF AN IP ADDRESS AS A MEANS OF IDENTIFICATION

Plaintiff alleges that "[a]n IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet." (Amended Complaint ¶ 14).[2] However, Plaintiff in another identical case when presented with evidence that it had brought suit against an individual that was not even in the country at the time of the alleged infringement, but more importantly, who's IP address did not correspond to the IP address in the claims, admitted on the record that Plaintiff now asserts that "IP addresses are

---

[2] Plaintiff has previously and inconsistently alleged that this identified is "unique." See (See *Malibu Media, LLC v. Lindsey Maness*, Case No.: 1:12-cv-01873, Feiser Decl. at ¶7; (Dck. 1))

12

routinely assigned to different people [which] is why Plaintiff provides ISPs with the exact time that the infringement occurred." (*Malibu Media, LLC, v. Leo Pelizzo*, S.D. Fla., Case No. 1:12-cv-22768-PAS, Plaintiff's Response to Def. Mot. to Dismiss, Dck no. #13, p.6.) This statement, of course, supports the arguments raised by other courts to this very Plaintiff. *See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012)(unambiguously expressing concerns to Malibu Media, LLC and its counsel "that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2.")

As Plaintiff has now admitted, "IP Addresses are routinely assigned to different people", then Plaintiff's allegations are implausible unless they specify times and dates that the Defendant was assigned the infringing IP address. Here, Plaintiff has simply alleged that it identified "each of the Defendant's computers used their identified IP addresses" participating in infringing activity. (Amended Complaint ¶48). Plaintiff includes no allegation that Defendant was assigned to the infringing IP address at the specific times and dates the infringing activity. Consequently, Defendant's allegations fail to "plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a 'speculative level'." *Effkay Enters, supra* at *4-5 (citing *Twombly*, 127 U.S. at 1964-65)).

## D. PLAINTIFF'S CLAIMS OF SECONDARY LIABILITY FAIL AS A MATTER OF LAW

Having failed to support a claim of direct copyright infringement, Plaintiff's claims for secondary copyright liability must also fall. Both contributory and vicarious infringements require someone to have directly infringed the copyright. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1181 (10th Cir. 2009); *citing See Bridgeport Music, Inc. v. Diamond Time,*

13

*Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) ("Liability for contributory infringement is based on the defendant's relationship to the direct infringement.). "There can be no contributory infringement without a direct infringement." *Matthew Bender & Co. v. West Publ'g. Co.*, 158 F.3d 693, 706 (2d Cir. 1998); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Having failed to support any claim of direct infringement above a speculative level, Plaintiff's claims inevitably must fail and its Amended Complaint dismissed.

### E. PLAINTIFF HAS FAILED TO ALLEGE FACT SUFFICIENT TO SUPPORT ANY CLAIM OF SECONDARY LIABILITY

Even assuming, *arguendo* that Plaintiff's already threadbare allegations of direct copyright infringement somehow rise above their current level of speculation, Plaintiff has still failed to allege facts sufficient to support for claims of secondary copyright infringement liability. See e.g. *Shell v. Am. Family Rights Ass'n*, 2012 U.S. Dist. LEXIS 140449, 41-44 (D. Colo. Sept. 28, 2012)(dismissing claims of contributory and vicarious copyright infringement for failing to plead sufficient facts.)

For contributory infringement, a plaintiff must allege (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) material contribution to the infringement. See *Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); see also *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."). For vicarious infringement, a plaintiff must allege that the defendant (i) had the right and ability to supervise the infringing activity or infringer; and (ii) possessed a direct financial

interest in the exploited copyrighted materials. See *Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 (4th Cir. 2002); *Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971 (2d Cir. 1997) (requiring the defendant have a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials).

Plaintiff's Amended Complaint does not include any specific alleged facts which, if true, would demonstrate that Defendant knew or materially contributed to the infringing conduct of any person, including his co-defendants, who allegedly published Plaintiff's copyrighted material without permission. Numerous court have found that the disconnected nature of BitTorrent technology is such that the actions generally averred to in Plaintiff's Amended Complaint show a distinct lack of cooperation and or material contribution one to another. *See, e.g., Patrick Collins, Inc. v. Does 1-23*, No. 2012 U.S. Dist. LEXIS 47687, 2012 WL 1144918, at *6 (D. Md. Apr. 4, 2012) ("the alleged infringement was committed by unrelated defendants, through independent actions, at different times and locations"); *Liberty Media Holdings LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 675 (S.D. Fla. 2011) (because the alleged infringement occurred on different days and at different times during a two-week period, and noting that even if the infringement did occur at the same time, "due to the decentralized operation of BitTorrent, this fact alone would not imply that Defendants participated in or contributed to the downloading of each other's copies of the work at issue" (internal quotation marks and citation omitted)); *Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011) ("[u]nder the BitTorrent Protocol, it is not necessary that each of the [Doe defendants] participated in or contributed to the downloading of each other's copies of the work at issue -or even participated in or contributed to the downloading by any of the [Doe defendants]"); *Malibu Media, LLC v. John Does 1-23*, 2012 WL 1999640, *4 (E.D. Va. May 30, 2012) (finding that, in a file sharing

15

case, "a plaintiff must allege facts that permit the court at least to infer some actual, concerted exchange of data between those defendants."); *Digital Sins, Inc. v. John Does 1-245*, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) (finding no concerted action between defendants that only utilized the same computer protocol to download a file).

Similarly, with respect to the vicarious infringement claim, the Amended Complaint does not allege any facts that would show that Defendant had any right or ability to supervise the persons that allegedly published Plaintiff's copyrighted materials or that Defendant benefitted financially from the exploitation of such copyrighted materials. Therefore, the vicarious infringement and contributory infringement claims should be dismissed as asserted against Defendant.

## F.  PLAINTIFF'S AMENDED COMPLAINT IS INACCURATE. MISLEADING AND NOT OFFERED IN GOOD FAITH

Plaintiff's Amended Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion that Defendant is the "true" infringer. As noted above, these claims find sole support in allegations that evidence was gathered by a foreign "IP harvesting firm" IPP, Ltd.[3] Perhaps more fatal to Plaintiff's allegations, the Amended Complaint is inaccurate and misleading as the actual nature of IP addresses and their inability to identify an alleged infringer. Each of these defects will be taken up in turn:

First, Plaintiff alleges that "[a]n IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet." (Amended Complaint ¶ 14).  However, this is incorrect and misleading.  As previously described, any subscriber of an ISP, such as Defendant, who connects their computer to the

---

[3] It is also commonly know that firms such as IPP, Ltd., have a direct financial interest in the outcome of case where they provide evidence undermining the credibility of Mr. Feiser's entire declaration. *See e.g. Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 282, 316 (E.D.N.Y. 2011) (Court determined declarant lacked credibility due to direct financial interest in the action).

Internet via the ISP, for example through a wireless router, is assigned an Internet Protocol (IP) address. *Kirch*, 2011 U.S. Dist. LEXIS at *10. Such IP address may further be dynamic such that it changes every time a user connects to the internet. The purpose of an IP address is to route traffic efficiently through the network. IP addresses only specify the locations of the source and destination nodes in the topology of the routing system. As such, as an IP address, as described above, is not assigned to a "computer" but merely an internet access point such as a wireless router. *In Re: BitTorrent*, 2012 U.S. Dist. LEXIS 61447 at *13. ("[m]ost, if not all, of the IP addresses will actually reflect a wireless router or other networking device). Furthermore, as an IP address simply cannot identify a computer being used nor the actual user, *Id.* at 9, Plaintiff's allegations are solely directed to the Defendant as he is the internet subscriber.

This statement contradicts Plaintiff's earlier statements to this Court in identical cases conceding that that the ISP can only correlate an IP address to "the subscriber of the internet service." (*Malibu v. Media, LLC., v. Maness*; Civil Action No. 12-cv-01873, Dck. No. 1, Feiser Declaration ¶9). Plaintiffs unsupported and misleading conflation between computer/internet access point, and Defendant/subscriber with an actual infringer/user -- if such a person even exists -- cannot rise above merely a speculative claim for relief against Defendant and Plaintiff's claims should be dismissed.

Second, no good faith basis exists for the statement that the information listed in Exhibits A of the Amended Complaint identified "each of the Defendants' acts of copyright infringement occurred using an Internet Protocol address ("IP address")" (Amended Complaint. ¶5). The Amended Complaint goes onto to make the unsupported statement that "Defendant" participated in the alleged infringing activity, (*Id.* at ¶67), and that "ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity. (*Id.* at ¶15). Again,

17

these statements are incorrect and misleading and not offered in good faith. As exhaustively pointed out an IP address can neither identify an individual nor a specific computer, let alone Defendant's computer, or any specific computer accessing the internet. *See, In Re: BitTorrent*, 2012 U.S. Dist. LEXIS 61447 at *13. ("Most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs (sic) will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper.").

There exists no reasonable good faith basis upon which Plaintiff could state that the Defendant, based on an IP address alone infringed on anyone's work(s). In an identical Bittorrent case, two separate declarations -- herein referred to as Exhibit B and incorporated in their entirety by reference -- provided by experienced and qualified computer science professionals confirm that there is no way that a person in Plaintiff's position could have made the aforementioned claims in good faith. (Decl. Stephen Hendricks ¶10). Indeed, both declarations confirm that it would be impossible to make any such determination. (Decl. Stephen Hendricks ¶10; Decl. John Simek ¶6).[4] Such inaccurate and misleading evidence offered in bad faith cannot support Plaintiff's claims and its Complaint should be dismissed.

Third, the Amended Complaints conclusory and unsupported allegations that the Defendant: 1) committed an act of infringement, 2) using his computer; and that he 3) can be identified fails as a matter of fact. For example, a subscriber can be misidentified in multiple ways as an infringer without participating in any infringing behavior, including at least:

1. Some members of a swarm simply and automatically pass on routing information to other clients, and never possess even a bit of the movie file;[5]

---

[4] Similar to the Defendant referenced in both the Hendricks and Simek declarations, Defendant's ISP is Comcast.
[5] Sengupta, S. et al., Peer-to-Peer Streaming Capacity, IEEE Transactions on Information Theory, Vol. 57, Issue 8, pp. 5072-5087, at 5073 (Prof. Helmut Bolcski, ed., 2011) ("A [BitTorrent] user may be the source, or a receiver, or a helper that serves only as a relay.").

18

2. A client requesting a download can substitute another IP address for its own to a Bittorrent tracker;[6]

3. A user can misreport its IP address when uploading a torrent file. A user in the network path between the user monitoring IP address traffic and the Bittorrent tracker can implicate another IP address;[7]

4. Malware on a computer can host and distribute copyrighted content without knowledge or consent;[8]

5. There are reliability issues with using IP addresses and timestamps to identify the correct party;[9]

6. If a subscriber has dynamic IP addressing through its website host, it is sharing an IP address with several other subscribers;[10]

7. Anyone with wireless capability can use a subscriber's "wi-fi" network to access the Internet, giving the impression that it is the subscriber who is infringing;[11] or

8. Human error by IPP, Ltd, Plaintiff and/or the ISP among others.

---

[6] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or—Why My Printer Received a DMCA Takedown Notice*, 3 (2008), http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf See also, "IP address spoofing" http://en.wikipedia.org/wiki/IP_address_spoofing (Last visited August 2, 2012) (the term IP address "spoofing" refers to the creation of a forged IP address with the purpose of concealing the user's identity or impersonating another computing system.). Specifically, the article concludes: "[W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

[7] Ibid.

[8] Ibid.

[9] Ibid. ("When IP addresses are assigned dynamically, reassignment of an IP address from an infringing user to an innocent user can cause the behavior of the infringing user to be attributed to the innocent user. Because the monitoring client (copyright holder) records information from the tracker of the Bittorrent client, the information can quickly become inaccurate and will not implicate the correct user.")

[10] "Web hosting service" http://en.wikipedia.org/wiki/Web_hosting_service (Last visited August 2, 2012).

[11] Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). See Carolyn Thompson, Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks (April 25, 2011), www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

19

All of the above footnoted information is publically available and may be considered by this Court. *See Grynberg v. Koch Gateway Pipeline Co., 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)*(in ruling on a Rule 12(b)(6) motion to dismiss, a court may properly consider facts subject to judicial notice such as court files and matters of public record)(citations omitted).

Such facts do not exist in a vacuum. As noted by numerous courts, Plaintiff's rhetorical sophistry "has the potential to draw numerous innocent internet users into the litigation." *Hard Drive Prods., Inc. v. Does 1-130*, No. C-11-3826 DMR, 2011 U.S. Dist. LEXIS 132449, at *6 (N.D.Cal. Nov. 16, 2011)).

Recent court decisions have expressed strong concerns along these lines about the coercive nature of copyright claims based on Bittorrent identification and especially involving pornographic material. *In re Bittorrent*, supra, 2012 WL 1570765 at *10 ("This concern, and its potential impact on social and economic relationships, could compel a defendant entirely innocent of the alleged conduct to enter an extortionate settlement"); SB*O Pictures, Inc. v. Does 1-3036*, 2011 U.S. Dist. LEXIS 137361, at *11 (N.D. Cal. Nov. 30, 2011) (a defendant – "whether guilty of copyright infringement or not -- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"); *See also Zero Tolerance Entertainment, Inc. v. Does* 1-45, 2012 WL 2044593 at *1 (S.D.N.Y. Jun. 6, 2012) (discovery of ISP subscriber information "has been used repeatedly in cases such as this one to harass and demand of defendants quick settlement payments, regardless of their liability").

Defendant does not argue that Plaintiff has no right to enforce its valid copyrights in accordance with the laws and procedures of this Court, however, such claims must comport with

20

the pleading and evidentiary standards of those same laws. It has not, and its Complaint should
be dismissed.

### G. COUNSEL IN IDENTICAL BITTORRENT CASES HAVE ADMITTED ON THE RECORD THAT THERE EXISTS A SIGNIFICANT RISK OF MISIDENTIFICATION

The increasing popularity of wireless routers through which unknown interlopers can
access subscribers' internet accounts, *In re Bittorrent*, supra, 2012 WL 1570765 at *3, makes the
allegation that the subscribers committed the infringement in this case all the more speculative
and unsupportable. The Court should not close its eyes to the significant risk that people
innocent of any copyright infringement are being falsely identified as "Defendants" and swept
up in such BitTorrent lawsuits. Specifically, in an age when most homes have routers and
wireless networks and multiple computers share a single IP address "there is a reasonable
likelihood that the [defendants] may have had no involvement in the alleged illegal downloading
that has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S.
Dist. LEXIS 94648 (D.D.C. July 10, 2012).

Various plaintiffs in identical Bittorrent cases have even admitted on the record that ISP
subscriber information is insufficient to identify and name an alleged infringer. Indeed, as one
judge observed in another of identical Bittorrent case, plaintiff's counsel admitted in open court
that:

> 30% of the names turned over by the ISP's are not those of the individuals who
> actually downloaded or shared copyrighted material.

*Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 229, 242 (S.D.N.Y. 2012) citing (1/17/12 Tr. at 16)
(emphasis added); *see also Pacific Century Intern. Ltd., v. Does 1-101*, 2011 U.S. Dist. LEXIS
124518, *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the

21

court that the requested discovery would allow it to "fully identify" Defendants and further admitting that the discovery often will not reveal Defendants' identities); *AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 134655, at *11-12 (N.D. Cal. Nov. 22, 2011)(plaintiff conceded on the record that "the [ISP subscriber] information subpoenaed will merely reveal the name and contact information of the subscriber to the Internet connection that was used to download the copyrighted work, but it will not reveal who actually downloaded the work and therefore who can be named as a defendant.")

Instructive for this Court is *Boy Racer, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 103550 (N.D. Cal. Sept. 13, 2011). Here the plaintiff in identical Bittorrent case admitted that its previous representation to the court that ISP subscriber information was not sufficient to "fully identify" a P2P network user suspected of violating the plaintiff's copyright was false and instead that still more discovery would be required to identify the actual infringer. *Id.* at *6-7. The Plaintiff in that case specifically stated on the record that:

> While Plaintiff has the identifying information of the subscriber, this does not tell Plaintiff who illegally downloaded Plaintiff's works, or, therefore, who Plaintiff will name as the Defendant in this case. It could be the Subscriber, or another member of his household, or any number of other individuals who had direct access to Subscribers network.

*Id.* Needless to say the *Boy Racer* court found this "turn of events troubling, to say the least." *Id.* at *7-8.

Even more instructive for this Court, in another identical Bittorrent case, plaintiff's counsel, in seeking to address the Court's concern that it may be pursing and innocent internet subscribers admitted in court documents that it would require additional discovery before it could determine if the subscriber was in fact one in the same stating that:

> Although a subscriber and doe defendant will often be one-and-the-same, it can be the case that they are different people. In cases, such as the present action,

22

where the subscriber completely refuses any form of communication with Plaintiff's counsel, limited additional discovery is often needed to confirm that the subscriber may be named as a Doe Defendant.

Further stating that:
"[a]fter making its determination [through additional deposition discovery] as to the correct Defendant, Plaintiff will effectuate service."

*Hard Drive Prod's. v. Doe*, N.D. Cal. Case No. 22-1566, Status report filed by Brett Gibbs: Dkt. No. 29, 11/11/11). *See* Section III(c), *infra*. Similar to the 30% error rate admitted in the *Digital Sins* court, here plaintiff's counsel, operating under nearly identical facts admits that in order to have a good faith basis to allege that an Internet subscriber is actually a Defendant; it needs to know more than that the person happens to pay the bill. *Id*.[12]

Such admissions provide further support that Plaintiff's unsupported "guess" that Defendant is the infringer in this case is utterly speculative, and the complaint is thus subject to dismissal if not sanctions under Fed.R.Civ.P. 11, as: 1) Plaintiff's own Amended Complaint admits that it does not know who actually committed the alleged infringement; 2) the Amended Complaint alleges no facts supporting an inference that the subscriber of the account, i.e., the Defendant who merely pays the bill for the account, is in fact the individual who actually uploaded or downloaded Plaintiff's movie; and 3) the Amended Complaint makes no allegations as to how the true infringer -- if one even exists -- could be determined, or how Plaintiff would determine it; the 4) Amended Complaint alleges no basis for holding an account subscriber liable for the allegedly infringing conduct of unknown others, again, even if such person(s) even existed.

## H. PLAINTIFF'S ALLEGATIONS ARE LIKELY UNSUPPORTABLE UNDER EVEN RULE 11

---

[12] These aforementioned admissions may be judicially noticed by this Court. *See generally St. Louis Baptist Temple v. FDIC*, 605 F. 2d 1169, 1171-1172 (10th Cir. 1979) ("federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.").

23

Plaintiff conclusory allegations that Defendant, as merely an internet subscriber is the "true" infringer is likely not even supportable under Fed.R.Civ.P. 11, let alone Fed.R.Civ.P. 12(b)(6). Specifically, naming an internet account subscribers as a Defendant – without any evidentiary basis for claiming that the subscribers actually committed the alleged infringement – likely violates Rule 11's requirement that "the factual contentions (i.e., that the defendant in this case was personally involved in uploading and downloading copyrighted material) have evidentiary support . . ." An attorney's signature on a motion or pleading means "that to the best of his or her knowledge, information, and belief there is good ground to support the contentions in the document, both in terms of what the law is or should be and in terms of the evidentiary support for the allegations, and that he or she is acting without an improper motivation." *Charles Alan Wright & Arthur R. Miller, 5A Fed. Prac. & Proc. Civ.* § 1335 (3d ed.).

Plaintiff, Malibu Media, LLC, has been specifically warned in an identical Bittorrent case of the potential for sanctions for incorrectly identifying and naming defendants. *See Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) ("The plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed.R.Civ.P., if the John Doe defendant is incorrectly identified"); *see also e.g. Hard Drive Productions v. Does* 1-48, No. 11-9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, *6 (N.D. Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie). As another court recognized earlier this month, subscribers to internet accounts may be made defendants in these kinds of cases only "on the basis of their allegedly infringing activity, not due to their status as subscribers of the IP address utilized." *Discount Video Center, Inc. v. Does 1-29*, 2012 U.S. Dist. LEXIS 112518, at *5 n. 7 (D. Mass. Aug. 10, 2012).

24

I. **PLAINTIFF'S SPECULATIVE ALLEGATIONS HAVE LED TO ABUSIVE AND INAPPROPRIATE LITIGATION BEHAVIOR IN THIS AND OTHER JURISDICTIONS**

Plaintiff, Malibu Media, LLC, and its counsel Mr. Kotzker have already been found to have in engaged litigation behavior that is inappropriate, abusive and unfair. *In re BitTorrent*, supra at *19 (E.D.N.Y. 2012) (noting that "plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants"). Indeed, the *In re BitTorrent* court went so far as to describe Plaintiff's justifications for such tactics as "rambling" and "farcical." *Id.* at n7. More on point, the Court noted that one defendant in that case offered unfettered access to their network and computers coupled and other exculpatory evidence but was flatly refused. *Id.* at 28. ("In this case, John Doe #16 offered the Plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading.). Clearly such a showing undermines the truth of Plaintiff's allegations that Defendant is the true infringer.

Undermining Plaintiff's credibility, Plaintiff and its counsel, Mr. Kotzker, are also currently under the threat of sanctions for disobeying a direct Court order further casting doubt on Plaintiff's sincerity in vindicating its right. See *In re BitTorrent Adult Film Copyright Infringement Cases*; Order; Case No. 2:12-cv-01147-JS-GRB Dck. 9 (Filed 07/31/12) ("Less than three months after addressing concerns about potentially abusive litigation tactics by plaintiffs in these actions, this Court is *again* confronted with indicia of improper conduct by plaintiffs' counsel, to wit: plaintiffs' counsel apparently ignored, or tried to circumvent, the very safeguards the undersigned put in place to help prevent unfair litigation tactics while permitting plaintiffs to pursue their claims").

25

Perhaps even further calling into question the truthfulness of Plaintiff's accusations, just this week, Plaintiff, in a judicially ordered "bell-weather" trial in the District Court of Pennsylvania, admitted on the record to filing false statements, submitting filings drafted by one attorney and filed under another attorney's ECF, and filed documents under the signature of one attorney who lacked knowledge of the statements averred. *Malibu Media v. John Does 1-14*, Civil No. 2:12-cv-02084-MMB (Dck. No.'s 32, 34 & 37). In this case Malibu Media is also under threat of sanctions for filing un-redacted documents in direct contravention of a standing Court Order. (Id. at Dck. 37). Malibu Media is also under the threat of sanction in Colorado for unjustified refusals to comply with lawful discovery demands. *Malibu Media, LLC, v. Jeff Fantalis*, Civil Action No. 1:12-cv-00886; Motion to Compel and Sanction Plaintiff Malibu Media (Dck. No. 86).

One of the main tactics that Judge Brown in the *In Re Bittorrent* decision found so "improper" was the use of "settlement negotiators" whom, notwithstanding a John Doe's protestations of innocence, "offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating." *Id.* at. pp. 8–9, 17, *citing On The Cheap, LLC v. Does 1-5011*, -- F.R.D. --, 2011 WL 4018258, at *4 (N.D. Cal. Sept. 6, 2011). As one court explained of *K-Beech*, "Some defendants have indicated that the plaintiff has contacted them directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation." *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6 (E.D. Va. Oct. 5, 2011). Upon information and belief as well as evidence, at least seven of the most notorious copyright trolls, including the plaintiff here, all employ the same third party company, based in Miami, to provide these harassing, "settlement negotiator" services, pursuant to a "Joint Sharing Agreement." Specifically, "Zero Tolerance, Third Degree, Patrick Collins, K-Beech, Malibu Media, Raw

26

Films, and Nu-Corp," all pool their resources to extract "settlements" as efficiently as possible.
Of, course the plaintiff will no doubt protest that there is nothing wrong with seeking to settle
civil actions. However, as Judge Brown correctly explains:

> "It would be unrealistic to ignore the nature of plaintiffs' allegations – to wit:
> the theft of pornographic films – which distinguish these cases from garden
> variety copyright actions. Concern with being publicly charged with downloading
> pornographic films is, understandably, a common theme among the moving
> defendants. As one woman noted in *K-Beech*, "having my name or identifying or
> personal information further associated with the work is ***embarrassing, damaging
> to my reputation in the community at large and in my religious community***."

*Id.* Many courts evaluating similar cases have shared this concern. *See ,e.g., Pacific Century
Int'l, Ltd. v. Does 1-37*, – F. Supp. 2d –, 2012 WL 1072312, at *3 (N.D. Ill. Mar. 30, 2012)
("the subscribers, often embarrassed about the prospect of being named in a suit involving
pornographic movies, settle"); *Digital Sins*, 2012 WL 263491, at *3 ("This concern, and its
potential impact on social and economic relationships, *could compel a defendant entirely
innocent of the alleged conduct to enter an extortionate settlement") SBO Pictures*, 2011 WL
6002620, at *3 (defendants "whether guilty of copyright infringement or not would then have to
decide whether to pay money to retain legal assistance to fight the claim that he or she illegally
downloaded sexually explicit materials, or pay the money demanded. This creates *great potential
for a coercive and unjust* 'settlement').

This Court has recognized the false-reality of contesting such allegations noting that "[e]
ven though copyright law expressly provides for an award of costs and reasonable attorney fees
to a party prevailing in its defense of a meritless infringement action, the economic realities of
securing counsel and paying in advance the costs of litigation turns this remedy into a Potemkin
Village." *Righthaven LLC v. Wolf*, 813 F. Supp. 2d 1265, 1271 n.2 (D. Colo. 2011). Clearly,
allowing such speculative claims against Defendant and others should cause the Court pause.

27

Finally, and perhaps most importantly, identical abusive and inappropriate litigation behavior is occurring here in Colorado. (*See* Affidavit of Christina Saunders; David S. Kerr; John Arsenault and Lindsey Maness.) Indeed, public records indicate that Plaintiff, Malibu Media, LLC, has filed approximately 355 lawsuits since February of this year, implicating what is believed to be approximately 5000 individuals or businesses. Assuming the generous estimate of a 30% false-positive rate, the potential exists for approximately ~1700 defendants to be wrongful caught up in such suits. Coupled with Plaintiff's consistent refusal to accept exculpatory evidence from Defendant -- and other similarly situated individuals as demonstrated in Exhibit A, supports a conclusion that Plaintiff's conclusory allegations lack evidentiary support and as such cannot rise above mere speculation warranting dismissal.

## CONCLUSION

Plaintiff's allegations against Defendant in this case are premised on the mere possibility that he might have been the infringing individual. Such conjecture, based solely on Defendants status as the internet accountholder, is exactly the kind of speculative pleading that is barred by *Twombly*, *Iqbal*, and their progeny. Plaintiff cannot just guess, as it does in its Complaint, that defendant "is the most likely infringer" because it doesn't have any factual basis to name anyone else. The Complaint must therefore be dismissed for failure to state a claim. Defendant further requests that the Court retain jurisdiction as to the issue of awarding costs, including imposition of sanctions under Fed.R.Civ.P. 11, and other bases.

Respectfully submitted Nov 7th, 2012.

s/Andrew Schinsky

28

Andrew Schinsky
2041 W. Ridge Road
Littleton, CO 80210

## CERTIFICATE OF COMPLIANCE WITH D.C.COLO.LCIVR 7.1

Pursuant to D.C.Colo.L.CivR. 7.1(A), counsel for Mr. Schinsky has conferred with Plaintiff's counsel in compliance with the aforementioned rule.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing MOTION, was served on this __7__ day of November, 2012 upon the following counsel:

29

Jason Kotzker
Kotzker Law Group
9609 S University Blvd., #632134
Highlands Ranch, CO 80163
jason@klgip.com

                         s/Andrew Schinsky
                         Andrew Schinsky

29