**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 12-cv-01394-WYD-MEH


MALIBU MEDIA, LLC,

      Plaintiff,

v.

LAURA LIN, ANDREW SCHINSKY,
MARK CRONSHAW, CHRISTOPHER O'SHELL,
WEI GOODRICH and JOHN DOE 1

      Defendants.

_____

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE STATE A CLAIM**
_____

      Defendant, Andrew Schinsky ("Defendant"), through undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby moves to dismiss Malibu Media, LLC's ("Plaintiff's") Complaint for failing to state a claim upon which relief may be granted. In support thereof, Defendant states as follows:

**INTRODUCTION**

      Plaintiff's Amended Complaint alleges that Plaintiff's materials were reproduced and distributed through a series of BitTorrent transactions conducted using a computer accessing the internet and identified through an Internet Protocol ("IP") address assigned to the Defendant's internet account. The entirety of these claims hinge upon Plaintiff's purely speculative conclusion that "[The ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." (Amended Complaint ¶15). This conclusion is prefaced exclusively on a boilerplate allegations used in hundreds of identical mass-copyright suits.

1

Plaintiff's thread-bare claims are conclusory, factually inaccurate, misleading and should be dismissed. *See Cory v. Allstate Ins*., 583 F.3d 1240, 1244 (10th Cir. 2009)("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based.")).

## I.     LEGAL STANDARD UNDER RULE 12(b)(6)

Plaintiff's pleadings are insufficient to support a challenge under Rule 12(b)(6). Specifically, to survive a motion to dismiss for failure to state a claim, a complaint must satisfy the pleading requirements set forth in Federal Rule of Civil Procedure 8(a)(2). While Rule 8's pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 555 (2007)). Consequently, to survive a motion for dismissal, a "complaint's allegations must plausibly suggest that the plaintiff has a right to relief [and raise] the possibility above a "speculative level'" *Effkay Enters. v. J.H. Cleaners, Inc*., 2008 U.S. Dist. LEXIS 46127 at *4-5 (D. Colo. June 5, 2008)(citing *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 1964-65 (2007). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 647  (2009). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Khalik v. United Air Lines*, 2010 U.S. Dist. LEXIS 129598 at *4 (D. Colo. Dec. 7, 2010)(quoting *Twombly*, *supra* at 557)). This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Patterson v. Dex Media, Inc*., 2012 U.S. Dist. LEXIS 124067 at *4-5 (D. Colo. Aug. 31, 2012)(citing *Twombly*, *supra.* at 556)).

## II.   PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO FRCP 12(b)(6) BECAUSE IT FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Dismissal of this action is warranted as Plaintiff has failed to plead any factual content allowing "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556)). In order to set forth a *prima facie* claim of direct copyright infringement Plaintiff must show ownership of a valid copyright[1] and an actual violation by the defendant of one or more exclusive rights set forth in 17 U.S.C. § 106. *See Feist Pubs., Inc., v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Pursuant to Fed.R.Civ.P. 8(a)(2), Plaintiff must plead facts sufficient to allow the Court to draw the inference that the defendant is liable for the alleged misconduct; in this case direct copyright infringement. However, Plaintiff's Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion that Defendant is infringer. Furthermore, Plaintiff's already threadbare Complaint is both factually inaccurate and misleading.

### A.   PLAINTIFF HAS NOT PLED SUFFICIENT FACTS TO ALLOW THE COURT TO DRAW THE REASONABLE INFERENCE THAT THE DEFENDANT IS LIABLE FOR COPYRIGHT INFRINGEMENT

Plaintiff's speculation that Defendant is the infringer is a guess. It is not supported by facts as required by Rule 8(a)(2). The sole allegation relied upon by Plaintiff in identifying the Defendant as the allegedly infringing party is that he was identified by his Internet Service Provider ("ISP") as the subscriber for internet service that was allegedly assigned an IP address from which Plaintiff's agent allegedly received a piece of Plaintiff's allegedly copyrighted works via the Bittorrent protocol.

---

[1] Defendant specifically reserves the right to contest not only the validity but ownership of such copyright(s) at a later date.

As a factual matter, any customer of an ISP -- such as the moving Defendant -- who connects their computer to the internet via the ISP is assigned an Internet Protocol (IP) address. In addition to the customer's IP address, the ISP's network is also assigned its own IP address. *See generally LVRC Holdings v. Brekka*, 581 F.3rd 1127, 1130 (9th Cir. 2009). An "IP address is a series of numbers associated with a server or website, and it is used to route traffic to the proper destination on the Internet." *Kirch v. Embarq Mgmt. Co*., 2011 U.S. Dist. LEXIS 92701 *10 (D. Kan. Aug. 19, 2011). More specifically, an IP address identifies only the location at which one of any number of computer devices may be deployed, especially when used with a wireless router. Speaking directly to this point, the United States District Court for the Eastern District of New York, in a case involving the Plaintiff Malibu Media, directly addressed the erroneous assumption that an internet subscriber identified only by an IP address assigned to their account is an infringer holding that:

> [T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time. An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones . . . Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function — here the purported illegal downloading of a single pornographic film — than to say an individual who pays the telephone bill made a specific telephone call.

* * *

> [this Court is] concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared copyrighted material. Counsel stated that the true offender is often the "teenaged son ... or the boyfriend if it's a lady." Alternatively, the perpetrator might turn out to be a neighbor in an apartment building that uses shared IP addresses or a dormitory that uses shared wireless networks. This risk of false positives gives rise to the potential for coercing unjust settlements from innocent defendants such

> as individuals who want to avoid the embarrassment of having their names publicly associated with allegations of illegally downloading "My Little Panties # 2."

*In re BitTorrent Adult Film Copyright Infringement Cases*, 2012 U.S. Dist. LEXIS 61447, at *9 (E.D.N.Y. 2012); (citing *Digital Sin, Inc. v. Does* 1-176, 2012 U.S. Dist. LEXIS 10803, at *3 (S.D.N.Y. 2012)) (citations omitted). The *In Re Bittorrent* court specifically rejected Malibu Media's assertion that by allowing it to discover the individuals associated with a specific IP address it would "reveal defendants' true identity," *Id.* at *13, correctly reasoning that identification of the actual infringer would be "unlikely" noting that "most, if not all, of the IP addresses will actually reflect a wireless router or other networking device, meaning that while the ISPs will provide the name of its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an employee, invitee, neighbor or interloper." *Id.*

This Court has recognized the practical "real-world" result of the simple calculation that an IP address does not identify an infringer. The honorable Judge Martinez in *Malibu Media, LLC v. Felitti* described the practical effect of this disconnect noting that:

> The Magistrate Judge assigned to all BitTorrent cases has noted that defendants are coming forward with a multitude of different defenses. Some are businesses alleging that a patron was the unlawful downloader. Others are elderly grandparents that do not even know what BitTorrent is or how to download a file from the internet; they may have owned the computer associated with the unique IP address, but have no knowledge of whether someone in their household may have used the BitTorrent protocol for the purposes alleged in the complaint."

2012 U.S. Dist. LEXIS 103393, at *9-10 (D. Colo. July 25, 2012). Despite the overwhelming and specific findings and admissions to the contrary, Plaintiff admittedly named the Defendant as the alleged "true" infringer simply because his name is on the cable bill. This central allegation is merely a guess. Rule 8(a)(2) requires more. This legal fiction has been resoundingly rejected by

this and other courts.[2] It requires Plaintiff to plead facts sufficient to allow the court to draw the reasonable inference that the defendant was the person who actually engaged in the alleged infringing activity. Federal lawsuits alleging nearly $2.4 million dollars in personal liability are not exercises in acceptable "percent error." Plaintiff has failed to carry this burden and its Complaint should be dismissed.

### B. PLAINTIFF FAILS TO ALLEGE FACTS THAT DEFENDANT COMMITTED A VOLITIONAL ACT OF COPYRIGHT INFRINGEMENT

Consistent with its burden under Fed.R.Civ.P. 8(a)(2), Plaintiff must plead facts sufficient to allow the Court to draw the inference that the Defendant violated one or more exclusive rights set forth in 17 U.S.C. §106. *See, Feist, supra.* 499 U.S. at 361. While copyright is a strict liability statute, many courts have correctly recognized that inherent in any such violation of a §106 right, some element of volition or causation must exist. *See Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993); (requiring Plaintiff to prove as a factual matter, Defendant copied portions of its work.); *see also Religious Tech. Ctr v. Netcom On-Line Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1369-70 (N.D. Cal. 1995) (granting motion to dismiss where Plaintiff failed to plead any plausible facts that Defendant committed a volitional act of copyright infringement.)

---

[2]   *See* e.g. *SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3 (N.D. Cal. 2011)("the ISP subscribers to whom a certain IP address was assigned may not be the same person who used the Internet connection for illicit purposes."); *Third Degree Films v. Doe*, 2011 U.S. Dist. LEXIS 128030, *9 (N.D. Cal. 2011)(ISP subscriber information "does not tell Plaintiff who illegally downloaded Plaintiff's works."); *Digital Sin, Inc. v. Does 1-5698*, 2011 WL 5362068, at *4 (N.D. Cal. Nov. 4, 2011)(ISP subscribers may not be the individuals who infringed upon Digital Sin's copyright; see also e.g. *In re Ingenuity 13 LLC*, 2012 U.S. Dist. LEXIS 38647, *18 (E.D. Cal. Mar. 20, 2012)( (ISP subscriber "information alone would not reveal who actually downloaded petitioner's work, since the subscriber's internet connection could have been used by another person at the subscriber's location, or by an unknown party who obtained access to the subscriber's internet connection without authorization" and that petitioner "would be required to engage in further pre-filing discovery to determine if a viable cause of action existed against any of the identified subscribers.")

Plaintiff alleges that Defendant is the subscriber of an internet service purportedly associated with the infringing IP address. Plaintiff's subscription to an internet service, however, is not a "volitional" act of infringement. *Cf. Disney Enters. v. Hotfile Corp*., 798 F. Supp. 2d 1303, 1309 (S.D. Fla. 2011) (noting that "courts have repeatedly held that the automatic conduct of software, unaided by human intervention, is not 'volitional.'"). Similarly, since an IP address cannot identify a specific person, an IP address – alone -- is insufficient to support any allegation of volitional conduct. Therefore, Plaintiff's mere allegation that technology *allegedly* subscribed to by the Defendant may have been used to infringe is, absent some allegation that Defendant consciously and physically executed the steps necessary to download Plaintiff's films, insufficient to support Plaintiff's claim of direct infringement. *See Cartoon Network LP v. CSC Holdings, Inc*, 536 F.3d 121 (2d Cir. 2008)(a defendant must "engage in volitional conduct - specifically, the act constituting infringement - to become a direct infringer"). As it has already been shown, Plaintiff cannot even identify who may have infringed its works, if such a person even exists. It certainly has not plead any facts supporting an inference that Defendant actually engaged in any volitional infringing activity, and thus lacks a good faith basis for asserting copyright infringement claims against Defendant.

## C.  PLAINTIFF'S CLAIMS OF SECONDARY LIABILITY FAIL AS A MATTER OF LAW

Having failed to support a claim of direct copyright infringement, Plaintiff's claims for secondary copyright liability must also fall. Both contributory and vicarious infringements require someone to have directly infringed the copyright. *La Resolana Architects, PA v. Reno, Inc*., 555 F.3d 1171, 1181 (10th Cir. 2009); *citing See Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 889 (6th Cir. 2004) ("Liability for contributory infringement is based on the defendant's relationship to the direct infringement.). "There can be no contributory infringement

without a direct infringement." *Matthew Bender & Co. v. West Publ'g. Co.*, 158 F.3d 693, 706 (2d Cir. 1998); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Having failed to support any claim of direct infringement by any party above a speculative level, Plaintiff's claims inevitably must fail and its Amended Complaint dismissed.

### D.  PLAINTIFF HAS FAILED TO ALLEGE FACT SUFFICIENT TO SUPPORT ANY CLAIM OF SECONDARY LIABILITY

Even assuming, *arguendo* that Plaintiff's already threadbare allegations of direct copyright infringement somehow rise above their current level of speculation, Plaintiff has still failed to allege facts sufficient to support claims of secondary copyright infringement liability.[3] *Shell v. Am. Family Rights Ass'n*, 2012 U.S. Dist. LEXIS 140449, at *41-44 (D. Colo. Sept. 28, 2012)(dismissing claims of contributory and vicarious copyright infringement for failing to plead sufficient facts.)

Plaintiff's Amended Complaint does not include any specific alleged facts which, if true, would demonstrate that Defendant knew or materially contributed to the infringing conduct of any person, including his co-defendants, who allegedly published Plaintiff's copyrighted material without permission over the course of several weeks. *Digital Sins, Inc. v. John Does 1-245*, 2012 WL 1744838, *2 (S.D.N.Y. May 15, 2012) (finding no concerted action between defendants that only utilized the same computer protocol to download a file).

---

[3] For contributory infringement, a plaintiff must allege (i) direct copyright infringement by a third-party; (ii) knowledge by the defendant of the direct infringement; and (iii) material contribution to the infringement. *See Columbia Pictures Indus., Inc. v. Redd Horne, Inc.*, 749 F.2d 154, 160 (3d Cir. 1984); see also *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 550 (4th Cir. 2004); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971) ("[O]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer."). For vicarious infringement, a plaintiff must allege that the defendant (i) had the right and ability to supervise the infringing activity or infringer; and (ii) possessed a direct financial interest in the exploited copyrighted materials. *See Nelson-Salabes, Inc. v. Morningside Dev.*, 284 F.3d 505, 513 (4th Cir. 2002); *Softel, Inc. v. Dragon Med. & Sci. Communs.*, 118 F.3d 955, 971 (2d Cir. 1997) (requiring the defendant have a right and ability to supervise that coalesced with an obvious and direct financial interest in the exploitation of copyrighted materials).

Numerous court have found that the disconnected nature of BitTorrent technology is such that the actions generally averred to in Plaintiff's Amended Complaint show a distinct lack of cooperation and or material contribution one to another. *See,* e.g., *Patrick Collins, Inc. v. Does 1-23,* No. 2012 U.S. Dist. LEXIS 47687, 2012 WL 1144918, at *6 (D. Md. Apr. 4, 2012) ("the alleged infringement was committed by unrelated defendants, through independent actions, at different times and locations"); *Liberty Media Holdings LLC v. BitTorrent Swarm,* 277 F.R.D. 672, 675 (S.D. Fla. 2011) (because the alleged infringement occurred on different days and at different times during a two-week period, and noting that even if the infringement did occur at the same time, "due to the decentralized operation of BitTorrent, this fact alone would not imply that Defendants participated in or contributed to the downloading of each other's copies of the work at issue" (internal quotation marks and citation omitted)); *Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011) ("[u]nder the BitTorrent Protocol, it is not necessary that each of the [Doe defendants] participated in or contributed to the downloading of each other's copies of the work at issue -or even participated in or contributed to the downloading by any of the [Doe defendants]").

Plaintiff's Amended Complaint fails to allege facts demonstrating that Doe Defendants actually shared the same file with one another, even unintentionally. Indeed, the alleged infringing conduct of each Doe Defendant occurred weeks apart apart. (Amended Complaint Exhibit C). Because "a downloader may log off at any time, including before receiving all the pieces of the copyrighted work," the fact that Defendants allegedly shared the same file at different times amounts to nothing more than a mere conclusory allegation of concerted action. *See Malibu Media LLC v. John Does 1-10,* No. 12-CV-01642 (C.D. Cal. Oct. 10, 2012) (No. 32) (severing and dismissing defendants where, because alleged conduct occurred at different dates

and times, "there [was] no indication that Defendants in each case had any knowledge of or direct contact with one another"). Moreover, Plaintiff's Amended Complaint does not allege any facts that would show that Defendant had any right or ability to supervise the persons that allegedly published Plaintiff's copyrighted materials or that Defendant benefitted financially from the exploitation of such copyrighted materials. Therefore, any vicarious infringement and contributory infringement claims should be dismissed.

### E.   PLAINTIFF'S ALLEGATIONS ARE INACCURATE. MISLEADING AND NOT OFFERED IN GOOD FAITH

Plaintiff's Amended Complaint consists of a series of conclusory statements arranged to support the already speculative conclusion that Defendant is the "true" infringer. As noted above, these claims find sole support in allegations that evidence was gathered by a foreign "IP harvesting firm" IPP, Ltd.[45] Perhaps more fatal to Plaintiff's allegations, the Amended Complaint is inaccurate and misleading as the actual nature of IP addresses and their inability to identify an alleged infringer. Each of these defects will be taken up in turn:

First, the Plaintiff's Complaint states that an "IP address is a number that is assigned by an Internet Service Provider (an "ISP") to devices, such as computers, that are connected to the Internet. ("ISP")," and that the "ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." (Complaint ¶¶14, 15).  However, this is

---

[4] It is worth noting that IPP, Ltd. the firm retained by Malibu to collect IP addresses in this matter, was formed under the laws of Germany and is a successor to the German company formerly known as Guardaley. Baumgarten Brandt, a German law firm who retained Guardaley for similar purposes, filed a suit against Guardaley alleging it was aware of serious flaws in their collection systems but chose not to disclose them. In its appeal to an injunction brought by Guardaley, Baumgarten successfully asserted that, among other things, Guardaley operated a "honeypot" scheme. This means Gurdaley was the initial seeder actually facilitating the alleged infringements to generate infringements lawsuits. (Exhibit C). If the initial seeder is indeed Malibu's agent in this case or others in this District, then something more serious than a motion to dismiss may likely be warranted.

[5] It is also commonly know that firms such as IPP, Ltd., have a direct financial interest in the outcome of case where they provide evidence undermining the credibility of Mr. Feiser's entire declaration. *See e.g. Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 282, 316 (E.D.N.Y. 2011) (Court determined declarant lacked credibility due to direct financial interest in the action).

incorrect and misleading, nor is it supported by the evidence submitted, namely the declaration of Tobias Feiser (Dck. No. 6). As noted above, an IP addresses may only specify the locations of the source and destination nodes in the topology of the routing system. As such, as an IP address, is not assigned to a "computer" but merely an internet access point such as a wireless router. *In Re: BitTorrent*, 2012 U.S. Dist. LEXIS 61447 at *13. ("[m]ost, if not all, of the IP addresses will actually reflect a wireless router or other networking device). <u>Such IP address can be dynamic such that they change every time a user connects to the internet, or may even change at anytime, even one second to the next.</u> Because an IP address cannot identify a computer being used or the actual user, Plaintiff's allegations are solely directed to the Defendant on the basis that he is the internet subscriber. Moreover, these allegations directly contradict Plaintiff's earlier statements to this Court conceding that that the ISP can only correlate an IP address to "the subscriber of the internet service." (*Malibu v. Media, LLC., v. Maness*; Civil Action No. 12-cv-01873, Dck. No. 1, Feiser Declaration ¶9). Plaintiffs unsupported and misleading conflation between computer/internet access point, and Defendant/subscriber with an actual infringer/user -- if such a person even exists -- cannot rise above merely a speculative claim for relief against Defendant and Plaintiff's claims should be dismissed.

Second, there exists no reasonable good faith basis upon which Plaintiff could state that the Defendant, based on an IP address alone infringed on anyone's work(s). In an identical Bittorrent case, two separate declarations -- herein referred to as Exhibit B and incorporated in their entirety by reference -- provided by experienced and qualified computer science professionals confirm that there is no way that a person in Plaintiff's position could have made the aforementioned claims in good faith. (Decl. Stephen Hendricks ¶10). Indeed, both declarations confirm that it would be impossible to make any such determination. (Decl. Stephen

Hendricks ¶10; Decl. John Simek ¶6). Such inaccurate and misleading evidence offered in bad faith cannot support Plaintiff's claims and its Complaint should be dismissed.

Third, the Complaints conclusory and unsupported statements that the Defendant: 1) committed an act of infringement, 2) using his computer; and that he, 3) can be identified fails as factual matter.[6] For example, a subscriber can be misidentified in multiple ways as an infringer without participating in any infringing behavior, including at least:

1. Some members of a swarm simply and automatically pass on routing information to other clients, and never possess even a bit of the movie file;[7]

2. A client requesting a download can substitute another IP address for its own to a Bittorrent tracker;[8]

3. A user can misreport its IP address when uploading a torrent file. A user in the network path between the user monitoring IP address traffic and the Bittorrent tracker can implicate another IP address;[9]

4. Malware on a computer can host and distribute copyrighted content without knowledge or consent;[10]

---

[6] All of the below footnoted information is publically available and may be considered by this Court. *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1279 n.1 (10th Cir. 2004)(in ruling on a Rule 12(b)(6) motion to dismiss, a court may properly consider facts subject to judicial notice such as court files and matters of public record)(citations omitted).

[7] Sengupta, S. et al., Peer-to-Peer Streaming Capacity, IEEE Transactions on Information Theory, Vol. 57, Issue 8, pp. 5072-5087, at 5073 (Prof. Helmut Bolcski, ed., 2011) ("A [BitTorrent] user may be the source, or a receiver, or a helper that serves only as a relay.").

[8] Michael Piatek et al., *Challenges and Directions for Monitoring P2P File Sharing Networks—or—Why My Printer Received a DMCA Takedown Notice*, 3 (2008), http://dmca.cs.washington.edu/uwcse_dmca_tr.pdf See also, "IP address spoofing" http://en.wikipedia.org/wiki/IP_address_spoofing (Last visited August 2, 2012) (the term IP address "spoofing" refers to the creation of a forged IP address with the purpose of concealing the user's identity or impersonating another computing system.). Specifically, the article concludes: "[W]e find that it is possible for a malicious user (or buggy software) to implicate (frame) seemingly any network endpoint in the sharing of copyrighted materials. We have applied these techniques to frame networked printers, a wireless (non-NAT) access point, and an innocent desktop computer, all of which have since received DMCA takedown notices but none of which actually participated in any P2P networks.

[9] Ibid.

[10] Ibid.

5. There are reliability issues with using IP addresses and timestamps to identify the correct party;[11]

6. If a subscriber has dynamic IP addressing through its website host, it is sharing an IP address with several other subscribers;[12]

7. Anyone with wireless capability can use a subscriber's "wi-fi" network to access the Internet, giving the impression that it is the subscriber who is infringing;[13] or

8. Human error by IPP, Ltd, Plaintiff and/or the ISP among others.

Defendant does not argue that Plaintiff has no right to enforce its valid copyrights in accordance with the laws and procedures of this Court, however, such claims must comport with the pleading and evidentiary standards of those same laws. It has not, and its Complaint should be dismissed.

## F.  THERE EXISTS A SIGNIFICANT RISK OF MISIDENTIFICATION

The increasing popularity of wireless routers through which unknown interlopers can access subscribers' internet accounts, *In re Bittorrent*, supra, 2012 WL 1570765 at *3, makes the allegation that the subscribers committed the infringement in this case all the more speculative and unsupportable.[14] Specifically, in an age when most homes have routers and wireless

---

[11] Ibid. ("When IP addresses are assigned dynamically, reassignment of an IP address from an infringing user to an innocent user can cause the behavior of the infringing user to be attributed to the innocent user. Because the monitoring client (copyright holder) records information from the tracker of the Bittorrent client, the information can quickly become inaccurate and will not implicate the correct user.")

[12] "Web hosting service" http://en.wikipedia.org/wiki/Web_hosting_service (Last visited August 2, 2012).

[13] Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP. The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid. Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material. Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections (including a secure connection from the State University of New York). See Carolyn Thompson, Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks (April 25, 2011), www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

[14] Recent court decisions have expressed strong concerns regarding the coercive nature of copyright claims based on Bittorrent identification and especially involving pornographic material. *In re Bittorrent*, supra, 2012 WL 1570765 at *10 ("This concern, and its potential impact on social and economic relationships, could compel a defendant

networks and multiple computers share a single IP address "there is a reasonable likelihood that the [defendants] may have had no involvement in the alleged illegal downloading that has been linked to his or her IP address." *Malibu Media, LLC v. John Does 1-11*, 2012 U.S. Dist. LEXIS 94648 (D.D.C. July 10, 2012).

Various plaintiffs in identical Bittorrent cases have even <u>admitted on the record</u> that ISP subscriber information is insufficient to identify and name an alleged infringer. Indeed, as one judge observed in another of identical Bittorrent case, plaintiff's counsel admitted in open court that: "<u>30% of the names turned over by the ISP's are not those of the individuals who actually downloaded or shared copyrighted material</u>." *Digital Sin, Inc. v. Does 1-176*, 279 F.R.D. 229, 242 (S.D.N.Y. 2012) citing (1/17/12 Tr. at 16) (emphasis added); *see also Pacific Century Intern. Ltd., v. Does 1-101*, 2011 U.S. Dist. LEXIS 124518, *2 (N.D. Cal. 2011)(noting that Plaintiff disavowed previous representations to the court that the requested discovery would allow it to "fully identify" Defendants and further admittimposing that the discovery often will not reveal Defendants' identities); *AF Holdings LLC v. Does 1-96*, 2011 U.S. Dist. LEXIS 134655, at *11-12 (N.D. Cal. Nov. 22, 2011)(plaintiff conceded on the record that "the [ISP subscriber] information subpoenaed will merely reveal the name and contact information of the subscriber to the Internet connection that was used to download the copyrighted work, but it will not reveal who actually downloaded the work and therefore who can be named as a defendant."); *Boy Racer, Inc. v. Doe*, 2011 U.S. Dist. LEXIS 103550, at *6-7 (N.D. Cal. Sept. 13, 2011)(plaintiff admitted on the record that its previous representation to the court that ISP

---

entirely innocent of the alleged conduct to enter an extortionate settlement"); SB*O Pictures, Inc. v. Does 1-3036*, 2011 U.S. Dist. LEXIS 137361, at *11 (N.D. Cal. Nov. 30, 2011) (a defendant – "whether guilty of copyright infringement or not -- would then have to decide whether to pay money to retain legal assistance to fight the claim that he or she illegally downloaded sexually explicit materials, or pay the money demanded. This creates great potential for a coercive and unjust 'settlement'"); *See* also Exhibit A Declaration of Morgan Pietz; Christina Saunders; David S. Kerr; John Arsenault, Lindsey Maness and John Doe.)

subscriber information was sufficient to "fully identify" a P2P network user suspected of violating the plaintiff's copyright was false.)

Such on the record admissions provide further support that Plaintiff's unsupported "guess" that Defendant is the infringer in this case is utterly speculative, and the complaint is thus subject to dismissal if not sanctions under Fed.R.Civ.P. 11. *See Malibu Media, LLC v. Doe*, 2012 U.S. Dist. LEXIS 110668, at *6-7 (M.D. Fla. Aug. 7, 2012) ("The plaintiff shall inform each John Doe defendant of the potential for sanctions under Rule 11, Fed.R.Civ.P., if the John Doe defendant is incorrectly identified"); *see also e.g. Hard Drive Productions v. Does* 1-48, No. 11-9062, 2012 U.S. Dist. LEXIS 82927, 2012 WL 2196038, *6 (N.D. Ill. June 14, 2012) (warning plaintiff to consider Rule 11 before naming defendant who disputed that he had illegally downloaded pornographic movie).

## CONCLUSION

Plaintiff's allegations against Defendant in this case are premised on the mere possibility that he might have been the infringing individual. Such conjecture, based solely on Defendants status as the internet accountholder, is exactly the kind of speculative pleading that is barred by *Twombly*, *Iqbal*, and their progeny. Plaintiff cannot just guess, as it does in its Complaint, because it doesn't have any factual basis to name anyone else. The Complaint must therefore be dismissed for failure to state a claim. Defendant further requests that the Court retain jurisdiction as to the issue of awarding costs, including imposition of sanctions under Fed.R.Civ.P. 11, and other bases.

Respectfully Submitted on November 22nd, 2012

By    <u>**s/ David S. Kerr**</u>
**David S. Kerr**
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Telephone: 970-224-3100
dkerr@idea-asset.com

### Certificate of Compliance with D.C. Colo. L. Civ. R. 7.1

Pursuant to D.C. Colo. L. Civ. R. 7.1(A), Defendant, acting in a *pro se* capacity previously conferred with Plaintiff's counsel concerning the relief Defendant seeks herein. Counsel for Defendant has additionally conferred with Plaintiff's counsel consistent with Rule 7.1(A).

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2012, a true and correct copy of the foregoing MOTION TO DISMISS was served via the CM/ECF system to the following:

JASON KOTZKER
KOTZKER LAW GROUP
10268 Royal Eagle Street
Highlands Ranch, CO 80129

All other attorneys of record in this case

DATED: November 22, 2012

By   **s/ David S. Kerr**_____
**David S. Kerr**
Santangelo Law Offices, P.C.
125 South Howes St., 3rd Floor
Fort Collins, CO 80521
Telephone: 970-224-3100
dkerr@idea-asset.com