IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-01394-WYD-MEH

MALIBU MEDIA, LLC,

    Plaintiff,

v.

WEI GOODRICH,

    Defendant.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

    Plaintiff has filed a Motion for Entry of Default Judgment against Defendant Wei Goodrich [filed May 8, 2013; docket #111]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to me on October 3, 2013 for a Report and Recommendation. Docket #114. The matter is briefed to the extent allowed by court rules and the prevailing law, and the Court heard oral argument and requested supplemental briefing on October 23, 2013. Based upon the record and for the reasons that follow, the Court recommends that the District Court **grant in part and deny in part** the motion as set forth herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the

**BACKGROUND**

In this case, Plaintiff's allegations involve a complicated technical process used to download copyrighted works (here, motion pictures) through the BitTorrent program; therefore, this Court finds it necessary first to explain how BitTorrent works, then to note its findings of fact in this case.

**I.    BitTorrent Protocol**

Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program. This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates. *Id.* at *1-*3. First, the vocabulary used in the technology:

> *Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.
>
> *IP Address:* The unique identifying number of a device connected to the internet.
>
> *Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.
>
> *File:* A collection of related data packets treated as a unit.
>
> *Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.
>
> *Hypertext Transfer Protocol* (HTTP): A system of communication standards that

---

aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

websites use to communicate with web browsers.

*BitTorrent:* A peer-to-peer file sharing protocol.

*Peer:* A BitTorrent user.

*Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).

*Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.

*Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.

*Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.

*Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).

*Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.

*Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted). Judge Ludington proceeds to describe the protocol and how BitTorrent works:

BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."

. . .

3

> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer makes those portions available to other peers in the swarm."
>
> Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:
>
> 1. Install BitTorrent (or have done so already).
> 2. Surf the web.
> 3. Click on a link to a *.torrent* file.
> 4. Select where to save the file locally, or select a partial download to resume.
> 5. Wait for download to complete.
> 6. Tell downloader to exit (it keeps uploading until this happens).
>
> BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."
>
> "In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."
>
> In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:
>
> Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at \*2-\*3 (citations omitted).

**II.     Findings of Fact**

1.      Plaintiff Malibu Media, Inc. is the owner of copyrighted films, sixteen (16) of which are at issue in this action. Exhibit C to Amended Complaint, docket #63-3.

2.      The films were on a website that was converted into a single torrent file ("siterip"), as evidenced by a single unique Cryptographic Hash Value (the "Unique Hash Number"). Amended Complaint, ¶ 19, docket #63.

3.      "Torrent sites" are websites which index torrent files that are currently being made available for copying and distribution by people using the BitTorrent protocol ("users"). There are numerous torrent websites, including www.TorrentZap.com, www.Btscene.com, and www.ExtraTorrent.com. Users typically go to torrent sites to upload and download copyrighted works. *Id.*, ¶¶ 35-36.

4.      When an initial seeder creates a torrent file and uploads it onto a torrent site, then other users may begin to download and upload the computer file to which the torrent is linked using the BitTorrent protocol and BitTorrent Client software that the users installed on their computers. The BitTorrent protocol causes the initial seed's computer to send different pieces of the computer file to the users seeking to download the computer file. *Id.*, ¶¶ 37-38.

5.      Once a user receives a piece of the computer file, it starts transmitting that piece to the other users. In this way, all of the users and seeders are working together in what is called a "swarm." *Id.*, ¶¶ 39-40.

6.      For example, an initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted work to each of the users. The recipient users then automatically begin delivering the piece they just received to the other users in the same swarm.

Once a user has downloaded the full file, the BitTorrent Client reassembles the pieces and the user is able to view the movie. *Id.*, ¶¶ 42-43.

7. Plaintiff retained IPP, Limited ("IPP"), which provides forensic investigation services to copyright owners, to identify the IP addresses belonging to people who use the BitTorrent protocol and the internet to reproduce, distribute, display or perform copyrighted works. *Id.*, ¶ 44; *see also* Declaration of Tobias Feiser, May 15, 2012 ("Tobias Declaration"), ¶¶ 5-6, docket #6-2.

8. IPP used forensic software named INTERNATIONAL IPTRACKER v1.2.1 and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions. INTERNATIONAL IPTRACKER v1.2.1 was correctly installed and initiated on a server located in the United States of America. Amended Complaint, ¶ 45; Tobias Declaration, ¶¶ 14-15.

9. IPP's agent, Tobias Feiser, personally extracted the data resulting from the investigation. After reviewing the evidence logs, Mr. Feiser isolated the transactions and the IP addresses used on the BitTorrent peer-to-peer network to reproduce, distribute, display or perform the Plaintiff's copyrighted works. Amended Complaint, ¶ 46; Tobias Declaration, ¶¶ 16-17.

10. Through one of the transactions, the computer using the IP address, 76.25.212.34, connected to the investigative server to transmit a full copy, or a portion thereof, of a digital media file identified by the Unique Hash Number, 121AC0B46088E7C235A23D4379BE65A1840E9B77. Amended Complaint, ¶ 48; Tobias Declaration, ¶ 18; *see also* Exhibit B to Tobias Declaration, docket #6-4.

11. The IP address, Unique Hash Number and hit date contained on Exhibit B to the Amended Complaint (Exhibit A to the motion) correctly reflect what is contained in the evidence logs.

6

Amended Complaint, ¶ 47; Tobias Declaration, ¶ 19.

12.     IPP's software analyzed each BitTorrent "piece" distributed by IP address 76.25.212.34 and verified that reassembling the pieces using a specialized BitTorrent Client results in copies of the 16 fully playable digital motion pictures copyrighted by Plaintiff. Amended Complaint, ¶ 49; Tobias Declaration, ¶ 21.

13.     IPP found that the following motion pictures were contained in the torrent file downloaded by IP address 76.25.212.34:

| Hit Date UTC | File Hash | Title |
| --- | --- | --- |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Carlie Beautiful Blowjob |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Carlie Big Toy Orgasm |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Carlie Leila Strawberries and Wine |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Daddys Office |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Jennifer Naughty Angel |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Just the Two of Us |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Kat Translucence |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Katka Cum Like Crazy |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Katka Sweet Surprise |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Kristen Girl Next Door |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Leila Sex on the Beach |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Megan Morning Bath |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Minas Fantasy |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | The Girl in My Shower |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Tiffany Teenagers in Love |
| 05/06/2012 04:48:12 | 121AC0B46088E7C235A23D4379BE65A1840E9B77 | Tori The Endless Orgasm |

Hearing Exhibit A, docket #117-1.[2]

13.     IPP was provided with a control copy of the copyrighted works identified on Exhibit B to the Amended Complaint (the "16 movies"). IPP's agent, Mr. Feiser, viewed the sixteen movies side-by-side with the digital media (torrent) file identified by Unique Hash Number, 121AC0B46088E7C235A23D4379BE65A1840E9B77, and determined that the digital media file

---

[2]Hearing Exhibits A and B actually identify a seventeenth movie, "Little Lover," allegedly copied by Goodrich; however, the movie was neither listed nor identified in the Amended Complaint and, thus, the Court will not consider whether Goodrich infringed Plaintiff's copyright as to this movie.

contained movies that were identical, striking similar or substantially similar to the Plaintiff's copyrighted works. Amended Complaint, ¶ 50; Tobias Declaration, ¶ 22.

14. IP address 76.25.212.34 downloaded the torrent file after the movies were registered with the Copyright Office:

| Title | Registration Number | First Publication | Registration Date | Hit Date |
| --- | --- | --- | --- | --- |
| Carlie Beautiful Blowjob | PA0001762079 | 03/26/2010 | 11/21/2011 | 05/06/2012 |
| Carlie Big Toy Orgasm | PA0001776839 | 03/22/2010 | 02/21/2012 | 05/06/2012 |
| Carlie Leila Strawberries and Wine | PA0001762081 | 05/07/2010 | 11/18/2011 | 05/06/2012 |
| Daddys Office | PA0001776838 | 11/12/2010 | 02/21/2012 | 05/06/2012 |
| Jennifer Naughty Angel | PA0001776809 | 11/05/2010 | 02/21/2012 | 05/06/2012 |
| Just the Two of Us | PA0001781672 | 11/18/2011 | 03/18/2012 | 05/06/2012 |
| Kat Translucence | PA0001762073 | 11/20/2009 | 11/19/2011 | 05/06/2012 |
| Katka Cum Like Crazy | PA0001762074 | 07/07/2010 | 11/21/2011 | 05/06/2012 |
| Katka Sweet Surprise | PA0001762075 | 08/04/2010 | 11/18/2011 | 05/06/2012 |
| Kristen Girl Next Door | PA0001762076 | 08/25/2010 | 11/18/2011 | 05/06/2012 |
| Leila Sex on the Beach | PA0001762083 | 12/22/2010 | 11/21/2011 | 05/06/2012 |
| Megan Morning Bath | PA0001762077 | 02/12/2010 | 11/18/2011 | 05/06/2012 |
| Minas Fantasy | PA0001762078 | 06/25/2010 | 11/23/2011 | 05/06/2012 |
| The Girl in My Shower | PA0001783549 | 10/23/2009 | 03/30/2012 | 05/06/2012 |
| Tiffany Teenagers in Love | PA0001762019 | 12/29/2010 | 11/20/2011 | 05/06/2012 |
| Tori The Endless Orgasm | PA0001762082 | 10/20/2010 | 11/18/2011 | 05/06/2012 |

Hearing Exhibit B, docket #117-2.

15. An ISP has determined that the IP address 76.25.212.34 belongs to its subscriber, Defendant Wei Goodrich. Goodrich is an individual residing at 2575 S. Syracuse Way, #F301, Denver, Colorado 80231. Amended Complaint, ¶ 12.

16. Goodrich was served with a summons and the Amended Complaint in this action on October 18, 2012. Affidavit of Service, docket #77.

17. Because Goodrich failed to answer or otherwise defend against Plaintiff's claims, the Clerk of the Court entered default against Goodrich on March 14, 2013. Docket #106.

18. Plaintiff seeks statutory damages for willful infringement and injunctive relief in this case. Amended Complaint, docket #63 at 13.

## PROCEDURAL HISTORY

Plaintiff initiated this action on May 30, 2012 against John Does 1-33. The case was originally drawn to Senior Judge Wiley Daniel and to the undersigned. On October 12, 2012, Plaintiff filed an Amended Complaint naming Wei Goodrich as one of five named Defendants in this case. Plaintiff served a summons and the Amended Complaint upon Defendant Goodrich on October 18, 2012; thus, Goodrich's answer or other response was due to be filed on or before November 8, 2012. Docket #77. However, Goodrich filed no answer nor other response before the deadline; therefore, on March 13, 2013, Plaintiff filed a Motion for Entry of Clerk's Default as to Defendant Goodrich. Docket #105. An Entry of Default was docketed by the Clerk of the Court on March 14, 2013. Docket #106. Plaintiff filed the present motion seeking default judgment on May 8, 2013. The Court heard the motion on October 22, 2013; Defendant Goodrich did not appear at the hearing. The Court directed Plaintiff's counsel to provide a written explanation and documentation concerning the downloading of a "siterip"; the Plaintiff supplemented its motion with this information on October 28, 2013. Dockets ##116-119.

The Court is now fully advised and recommends as follows.

## LEGAL STANDARDS

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides the authority for the District Court to enter default judgment. After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("defendant, by his default, admits the plaintiff's well-pleaded allegations of fact") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits.")); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th

Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded"). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)) ("upon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## **ANALYSIS**

Upon review of the record, the motion, all briefing and exhibits, the Court recommends finding that default judgment be entered in Plaintiff's favor against Defendant Goodrich pursuant to Fed. R. Civ. P. 55(b)(2) as follows.

**I.      Jurisdiction and Liability**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment). Here, the record reveals that Defendant Goodrich resides in Colorado and was served with process at his residence, 2575 S. Syracuse Way, #F301, Denver, Colorado 80231. *See* docket #77. As such, the Court has personal jurisdiction over Goodrich. In addition, this is a copyright infringement case, and the federal courts have original jurisdiction in such cases. *See* 28 U.S.C. § 1338. The Copyright Act creates a cause of action in favor of the owner of a copyright for direct infringement. 17 U.S.C. § 501.

Furthermore, taking its allegations as true, the Plaintiff has established violations of its copyrights by Defendant Goodrich, in that a computer at Goodrich's residence participated in an illegal download of a website containing sixteen (16) of Plaintiff's copyrighted works. A plaintiff is entitled to a determination of liability unless it has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof. *Weft, Inc.*, 630 F. Supp. at 1143. Here, Plaintiff alleges the following claims, summarized as follows:

> Defendant installed a BitTorrent "Client" software program onto a computer to serve as the "interface during the process of uploading and downloading data using the BitTorrent protocol." Amended Complaint, ¶¶ 24-26. Defendant visited a "torrent site," a website that indexes torrent files that are currently being made available for copying and distribution by persons using the BitTorrent protocol, to "upload and download Plaintiff's copyrighted Works." *Id.* at ¶¶ 35-36. Using the BitTorrent protocol, Defendant then formed part of a BitTorrent "swarm" and "directly interacted and communicated with other members of that swarm through digital handshakes, the passing along of computer instructions, uploading and downloading, and by other types of transmissions." *Id.* at ¶ 41.
>
> Thus forming part of a BitTorrent "swarm," Defendant participated in the process by which "one initial seeder can create a torrent that breaks a movie up into hundreds or thousands of pieces saved in the form of a computer file, like the Works here, upload the torrent onto a torrent site, and deliver a different piece of the copyrighted Works to each of the peers" in the swarm. *Id.* at ¶¶ 40, 42. The recipient peers "then automatically begin delivering the piece they just received to the other peers in the same swarm." *Id.* Once the Defendant had downloaded the full file of the copyrighted Work, "the BitTorrent Client reassemble[d] the pieces and [Defendant was] able to view the movie." *Id.* at ¶ 43. Also, once the Defendant had downloaded the full file, Defendant became "an additional seed" by continuing to distribute the torrent file, here the copyrighted Work. *Id.*
>
> By using the BitTorrent protocol, a BitTorrent Client and the processes described above, Defendant willfully and without authorization copied the constituent elements of the registered Works that are original, and violated Plaintiff's exclusive rights to reproduce, redistribute, perform and display the copyrighted works. *Id.* at Count I, ¶¶ 54-57.
>
> Plaintiff retained IPP, Limited ("IPP"), a forensic investigative services firm, to identify the Internet Protocol ("IP") addresses being used by persons using the BitTorrent protocol to reproduce, distribute, display or perform Plaintiff's copyrighted Works. *Id.* at ¶ 44. IPP used forensic software and related technology enabling the scanning of peer-to-peer networks for the presence of infringing transactions to isolate transactions and the IP addresses being used on the BitTorrent network to infringe Plaintiff's copyrighted Works. *Id.* at ¶¶ 45-50. The results of IPP's investigation established that Defendant's IP address was part of a "swarm" of peers that were infringing on Plaintiff's copyrighted Works. *Id.* IPP's investigative work thus provided Plaintiff with "the IP address, plus the date and time of the detected and documented infringing activity," which was subsequently used to establish Defendant's identity through its ISP's. *Id.*

Motion, docket #111-1 at 4-5, 7.

There are two elements to a copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). The plaintiff bears the burden of proof on both elements. *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005)).

Here, the Plaintiff alleges it owns the copyrights to each of the works (movies) listed above, and provides the registration number, publication date and registration date for each such film. *See supra*; *see also* Hearing Exhibit B, docket #117-2. The Court takes Plaintiff's well-pleaded allegations as true.

For the second element, Plaintiff must prove that Goodrich "unlawfully appropriated protected portions of the copyrighted work." *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that Goodrich, as a factual matter, copied portions of Plaintiff's work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir. 2002).

"A plaintiff can indirectly prove copying (in a factual sense) 'by establishing that a defendant had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77.F3d 1280, 1284 (10th Cir. 1996)). "A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable

opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007)).

Once copying has been established, "liability for copyright infringement will attach only where protected elements of a copyrighted work are copied." *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284). "The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.*

In this case, Plaintiff has sufficiently alleged that Goodrich copied its protected works by demonstrating, through verified testimony, that its investigator was able to connect with Goodrich's IP address to find one or more bits of each of the digital movie files contained in the "siterip" torrent file, identified by a single hash number, then downloaded a full copy of the torrent file from the BitTorrent file distribution network (accessed by Goodrich) and confirmed through independent calculation that the torrent file matched a copy of the website containing Plaintiff's copyrighted works. Plaintiff's investigator then verified that the torrent file containing copies of the 16 movies is identical, strikingly similar or substantially similar to the copyrighted works associated with that hash number. In fact, Plaintiff's investigator, Tobias Feiser, declares that he verified the similarity of the works by "view[ing] the Movies side-by-side with the digital media file identified by the hash

14

value set forth on Exhibit B." Tobias Declaration, ¶ 22, docket #6-2. Taking these well-pled allegations as true, the Court finds that Plaintiff has established Defendant Goodrich copied Plaintiff's copyright protected works and recommends that the District Court find Goodrich has committed sixteen (16) direct infringements of the Copyright Act against the Plaintiff.

**II.     Damages**

Here, Plaintiff seeks statutory damages and costs for the sixteen (16) alleged copyright infringements in May 2012. Under federal copyright law, "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Damages may be increased to up to $150,000 if the infringement is willful. 17 U.S.C. § 504(c)(2).

In this case, Plaintiff seeks $31,500.00 ($2,250.00 per infringement) on the basis of its allegation of willful infringement. Plaintiff also seeks proportionate attorney's fees and costs, in the amount of $2,550.00 and $445.00[3] respectively. These are also authorized under the statute. *Id.* § 505. Finally, Plaintiff seeks injunctive relief to prevent any further violations by Goodrich, pursuant to 28 U.S.C. § 502 as follows:

> (A) Permanently enjoin [ ] Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works;
>
> (B) Order that [ ] Defendant delete and permanently remove the torrent file relating to Plaintiff's copyrighted Works from each of the computers under ... Defendant's possession, custody or control;

---

[3] Plaintiff's counsel attests in his declaration that Plaintiff seeks $2,995.00 in costs; however, he delineates costs only as follows: $350 for the filing fee and $95 for process service fees. Docket #111-

> (C) Order that [ ]Defendant delete and permanently remove the copy of the Works [ ]Defendant has on computers under Defendant's possession, custody or control.

Amended Complaint, docket #63 at 13. Notably, 17 U.S.C. § 503(b) provides that "the court may order the destruction ... of all copies ... found to have been made or used in violation of the copyright owner's exclusive rights."

This case is one of hundreds filed in this District and handled by me as Magistrate Judge. It is also one of hundreds or perhaps thousands filed around the country in recent years by Plaintiff and other owners of pornographic films. Many of the defendants named in these lawsuits settle very early in the case. Some of those who do not settle have denied any participation in copyright infringement. Other defendants allege that their wireless connection may have been used by someone else to participate in the alleged swarm against Plaintiff's protected movies.

However, in this case, there is no evidence that anyone other than Goodrich committed the infringements. Despite being informed both before and during this litigation of the allegations against him, Goodrich has failed to answer or otherwise defend him or herself in this case. For these reasons, I believe that Plaintiff has established entitlement to willful infringement damages.

Furthermore, Plaintiff has established that courts across the country have typically awarded an average of $2,250.00 per infringement in cases of this type, and I have awarded that amount in cases nearly identical to this one. Thus, I find that a statutory damage award of $2,250.00 per infringement is appropriate and just in this case to accomplish the intent set forth by Congress in passing the Copyright Act. In addition, Plaintiff's request for $2,995.00 for attorney's fees and costs should be granted.

Finally, Plaintiff seeks injunctive relief prohibiting Defendant Goodrich from infringing Plaintiff's copyrighted works and requiring Defendant Goodrich to delete the torrent file relating

to Plaintiff's movies from each computer in Defendant Goodrich's possession, custody or control, and to delete any actual copy of Plaintiff's copyrighted works from such computers. The Court finds that Plaintiff's requests for an order directing Goodrich to "delete and permanently remove the digital media files relating to Plaintiff's works" and to "delete and permanently remove the infringing copies of the works" from each of the computers under Goodrich's possession, custody or control are reasonable requests and should be granted.

However, the Plaintiff has failed to proffer evidence sufficient to justify its request to enjoin Goodrich "from continuing to infringe Plaintiff's copyrighted works"; Plaintiff has produced no evidence that, as of this date, Goodrich actually possesses the copyrighted works on his/her computer(s) and continues to upload them to others. Further, there is no evidence today that Goodrich has downloaded (copied) any other of the Plaintiff's copyrighted works since May 2012.

The Court notes that, if the District Court were to grant Plaintiff's requested injunction for the deletion of Plaintiff's copyrighted works on Goodrich's computer(s), Goodrich would be unable to "continue" uploading such works via the BitTorrent system. Therefore, the Court recommends that the District Court deny Plaintiff's request for an order enjoining Goodrich from "continuing" to infringe on the Plaintiff's copyrighted works.

## CONCLUSION

Based on the foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the District Court **GRANT IN PART AND DENY IN PART** the Plaintiff's Motion for Entry of Default Judgment against Defendant Wei Goodrich [filed May 8, 2013; docket #111] as follows:

1.      Enter judgment in Plaintiff's favor against Defendant Wei Goodrich for direct

    copyright infringement of the Plaintiff's copyrighted works, as set forth in Count I of the Complaint;

2.  Order Defendant Goodrich to pay to Plaintiff the sum of $36,000.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $2,995.00 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

3.  Order Defendant Goodrich to permanently destroy all the digital media files relating to, and copies of, Plaintiff's copyrighted works made or used by him/her in violation of Plaintiff's exclusive rights, as well as all masters in his/her possession, custody or control from which such copies may be reproduced; and

4.  Deny Plaintiff's request to "[p]ermanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works."

Dated at Denver, Colorado, this 30th day of October, 2013.

          BY THE COURT:

          *Michael E. Hegarty*

          Michael E. Hegarty
          United States Magistrate Judge